EN EL TRIBUNAL SUPREMO DE PUERTO RICO

| | |
|---|---|
| Carmen D. Carrasquillo Pérez *et al.*<br><br>Recurridos<br><br>v.<br><br>Asociación y/o Consejo de Titulares del Condominio Parque 352 *et al.*<br><br>Recurridos<br><br>Cooperativa de Seguros Múltiples de Puerto Rico<br><br>Peticionaria | Certiorari<br><br>2024 TSPR 101<br><br>214 DPR \_\_\_ |

Número del Caso: CC-2023-0597

Fecha: 16 de septiembre de 2024

Tribunal de Apelaciones:

    Panel Especial

Representante legal de la parte peticionaria:

    Lcda. Joyce C. Zayas Cruz

Representante legal de la parte recurrida:

    Lcdo. Gerardo A. Quirós López

Materia: Obligaciones y Contratos, y Derecho de Seguros – El Consejo de Titulares de un condominio es un patrono estatutario obligado a mantener una póliza vigente de la Corporación del Fondo del Seguro del Estado cuando mantenga una relación contractual con un contratista o subcontratista independiente; la aseguradora puede excluir de sus cubiertas aquellos accidentes laborales que sean comprendidos por la Ley del Sistema de Compensaciones por Accidentes del Trabajo.

Este documento está sujeto a los cambios y correcciones del proceso de compilación y publicación oficial de las decisiones del Tribunal Supremo. Su distribución electrónica se hace como un servicio público a la comunidad.

EN EL TRIBUNAL SUPREMO DE PUERTO RICO

| | | |
|---|---|---|
| Carmen D. Carrasquillo Pérez, et al.<br><br>Recurridos<br><br>v.<br><br>Asociación y/o Consejo de Titulares del Condominio Parque 352 et al.<br><br>Recurridos<br><br>Cooperativa de Seguros Múltiples de Puerto Rico<br><br>Peticionaria | CC-2023-0597 | Certiorari |

Opinión del Tribunal emitida por el Juez Asociado señor Kolthoff Caraballo

En San Juan, Puerto Rico, a 16 de septiembre de 2024.

Hoy nos corresponde determinar si conforme a la antigua Ley Núm. 104 de 25 de junio de 1958, según enmendada, conocida como la *Ley de Condominios* (Ley de Condominios de 1958), 31 LPRA ant. sec. 1291,[1] el Consejo de Titulares de un condominio tiene la obligación de mantener una póliza por accidentes del trabajo bajo la Corporación del Fondo del Seguro del Estado (CFSE). Además, tenemos la ocasión para determinar si una aseguradora puede excluir de su póliza de responsabilidad pública aquellas lesiones corporales que

---

[1] Cabe destacar que la antigua *Ley de Condominios* fue derogada por la Ley Núm. 129 de 16 de agosto de 2020, según enmendada, conocida como la *Ley de Condominios de Puerto Rico* (Ley de Condominios de 2020), 31 LPRA sec. 1921. No obstante, debido a que los hechos que nos ocupan ocurrieron previo a la aprobación de la Ley de Condominios de 2020, en la presente *Opinión* resolvemos conforme a lo dispuesto en la Ley de Condominios de 1958.

surjan a raíz de un accidente laboral y que sean objeto de la cubierta provista por la CFSE.

Adelantamos que, en aquellas ocasiones en las que un Consejo de Titulares de un condominio y un contratista o subcontratista independiente mantengan una relación contractual, el referido Consejo se considerará como un patrono estatutario obligado a mantener una póliza vigente de la CFSE. Por último, concluimos que una aseguradora puede excluir válidamente de sus cubiertas aquellos accidentes laborales que sean comprendidos por la Ley Núm. 45 de 18 de abril de 1935, según enmendada, conocida como la *Ley del Sistema de Compensaciones por Accidentes del Trabajo* (Ley Núm. 45). Veamos.

**I**

La presente controversia originó con un accidente laboral que ocurrió el pasado 7 de abril de 2014. En este, el Sr. José Antonio Carrasquillo López (señor Carrasquillo López) perdió su vida al caer de la azotea en la que realizaba labores de mantenimiento.

Como resultado de lo anterior, sus hermanas, las señoras **Carmen D. Carrasquillo Pérez, Ramona Navedo Pérez y Encarnación Ayala Pérez (Recurridas)**, presentaron una demanda de daños y perjuicios en contra de varias partes. En primer lugar, demandaron al **Consejo de Titulares del Condominio del Parque 352 (Condominio del Parque)**, por ser este el lugar donde el fenecido laboraba al momento de los hechos. Además, acumularon como parte demandada a **Condominium Administration Services and Accounting (CASA)**, corporación contratada por el

condominio para prestar servicios de mantenimiento y quien, a su vez, contrató al señor Carrasquillo López. Por último, las Recurridas incluyeron a la **Cooperativa de Seguros Múltiples de Puerto Rico (CSM o Peticionaria)** por ser la aseguradora del Condominio del Parque y de CASA.

En lo pertinente a lo que nos ocupa, la Peticionaria presentó una *Contestación a demanda* en la que aceptó ser la aseguradora del Condominio del Parque y de CASA. No obstante, la cubierta indicaba que estaría **"sujeto a los términos, condiciones, limitaciones"** de sus respectivas pólizas. Además, presentó una serie de defensas afirmativas, entre estas, formuló que la reclamación de las demandantes no estaba cubierta bajo las pólizas que aseguraban al Condominio del Parque y a CASA.[2]

En vista de lo anterior, la Peticionaria presentó una *Moción de sentencia sumaria* en la que expuso que el accidente que sufrió el señor Carrasquillo López se encontraba excluido de las pólizas provistas al Condominio del Parque y a CASA.[3]

---

[2] Apéndice de la *Petición de certiorari*, págs 100-103.

[3] Apéndice de la *Petición de certiorari*, págs 135-373; En lo pertinente, expresó que ambas pólizas contenían las siguientes **cláusulas de exclusión**:
> [2. Exclusions:]
> [**This insurance does not apply to:**]
> d. **Workers Compensation and Similar Laws**
> Any obligation of the insured under a workers compensation, disability benefits or unemployment compensation law or any similar law.
> e. Employer's Liability
> "Bodily Injury" to:
> (1) An "employee" of the insured arising out of and in the course of:
> a. Employment by the insured: or
> b. Performing duties related to the conduct of the insured's business
> (2) The spouse, child, parent, brother or sister of that "employee" as a consequence of paragraph (1) above.
> This exclusion applies:

Añadió que el accidente en cuestión era objeto de la cubierta provista bajo la Ley Núm. 45, *supra*.[4]

Oportunamente, las Recurridas presentaron una *Oposición a Moción de Sentencia Sumaria* en la que expusieron que, a su entender, el *Endoso de Responsabilidad Patronal* que forma parte de las pólizas expedidas por la Peticionaria a nombre del Condominio del Parque y CASA, cubre la reclamación presentada.[5] También hicieron referencia a un endoso en ambas pólizas conocido como el **Employers Liability Stop Gap (Stop Gap)**,[6] el cual provee una cubierta de manera contingente para cubrir el restante que la CFSE no haya sufragado.

En desacuerdo, CSM presentó una *Breve réplica a oposición a moción de sentencia sumaria* mediante la cual expuso que el **Stop Gap era inaplicable** en el caso de autos.[7] Añadió que **este cubría reclamaciones de empleados del Condominio del Parque que surgieran de y en el curso de su empleo, en los casos en que la Ley Núm. 45**, *supra*, **no respondiese**. Como corolario, la Peticionaria sostuvo que para que el Condominio del Parque recibiera dicha cubierta, debió haber cumplido con las disposiciones de la referida Ley.

---

(1) Whether the insured may be liable as an employer or in any other capacity: and;
(2) To any obligation to share damages with or repay someone else who must pay damages because of the injury.
This exclusion does not apply to liability assumed by the insured under an "insured contract...".

[4] Ley Núm. 45-1935, conocida como la *Ley del Sistema de Compensaciones por Accidentes del Trabajo*, según enmendada, 11 LPRA sec. 32.

[5] Apéndice de la *Petición de certiorari*, págs. 374-385.

[6] *Íd.*, págs. 281-283.

[7] *Íd.*, págs. 386-388.

Así las cosas, el Tribunal de Primera Instancia notificó una *Sentencia Parcial y Orden* en la que declaró con lugar parcialmente la moción de sentencia sumaria que presentó CSM.[8] En específico, desestimó la demanda con relación a la póliza de CASA y sostuvo la reclamación en cuanto al Condominio del Parque.

Por otra parte, el Tribunal de Primera Instancia consignó los siguientes hechos incontrovertidos:

1. Para la fecha del 7 de abril de 2014, el [Condominio del Parque] y [CASA] tenían vigente entre estos un Contrato de Administración, Limpieza y Mantenimiento, en el cual CASA se obligaba a prestar servicios de limpieza y mantenimiento a dicho condominio.
2. Conforme dicho contrato, CASA se comprometió a brindar servicios de limpieza y mantenimiento a las áreas comunes del [Condominio Del Parque], proveyendo un empleado con una jornada de trabajo de 20 horas a la semana. Del contrato surge que, CASA "...será responsable de generar y/o mantener un (sic) póliza vigente en el Fondo del Seguro del Estado con una cubierta que incluya a todo el personal del contratista (sic) expresamente libera de responsabilidad la Junta de Directores por la adquisición de dicha póliza". También se dispone en el contrato que este sería responsable "...de mantener vigente una póliza de seguro de responsabilidad pública con una cubierta mínima de un millón de dólares ($1,000,000.00) por daños a la persona por ocurrencia y por daños a la propiedad".
3. Para la fecha del 7 de abril de 2014, el Sr. José A. Carrasquillo López era empleado de limpieza de [CASA] en el [Condominio del Parque].
4. [...]
5. El 7 de abril de 2014, el Sr. José A. Carrasquillo López cayó desde un tragaluz ubicado en la azotea del Condominio del Parque #352.
6. [CASA] reportó el accidente del Sr. José A. Carrasquillo López del 7 de abril de 2014 a la Corporación del Fondo del Seguro del Estado.

---

[8] *Íd.*, págs. 42-70.

7. La CFSE determinó que CASA era un patrono no asegurado, puesto que para la fecha de los hechos no existía una póliza vigente a favor de CASA ante la CFSE.

8. [Seguros Múltiples], para la fecha del accidente del Sr. José A. Carrasquillo López, tenía emitida en todo efecto y vigor una póliza de seguro a favor de [Condominio del Parque] con la numeración CPP-000631442-3/001; vigente del 9 de junio de 2013 al 9 de junio de 2014. *Commercial General Liability*. Además, [Seguros Múltiples] tenía otra póliza expedida a favor del Consejo denominada *Multipack Commercial Program*.

9. [Seguros Múltiples], para la fecha del accidente del Sr. José A Carrasquillo López, tenía emitida en todo efecto y vigor una póliza de seguro a favor de [CASA] con la numeración MPC-000641242-3/000; vigente del 24 de diciembre de 2013 al 24 de diciembre de 2014. MSS, anejo 4, copia certificada de la póliza MPC-000641242-3/000, MSS.

10. **Tanto la póliza CPP-000631442-3/001, del [Condominio del Parque], como la póliza MPC-000641242-3/000, de [CASA], contienen las siguientes cláusulas de exclusión:**

**d. Workers Compensation and Similar Laws**
**Any obligation of the insured under a workers 'compensation, disability benefits or unemployment compensation law or any similar law.**
**e. Employer's Liability**
**"Bodily Injury" to:**
**(1) An "employee" of the insured arising out of and in the course of:**
**a. Employment by the insured: or**
**b. Performing duties related to the conduct of the insured's**
**(2) The spouse, child, parent, brother or sister of that "employee" as a consequence of paragraph (1) above.**
**This exclusion applies:**
**(1) Whether the insured may be liable as an employer or in any other capacity; and**
**(2) To any obligation to share damages with or repay someone else who must pay damages because of the injury.**
**This exclusion does not apply to liability assumed by the insured under an "insured contract..."**

11. La póliza núm. CCP-000631442-3/000 incluye el endoso conocido como "Contingent Employer's Liability Endorsement (Stop Gap)" de 9 de junio

de 2013 y codificación núm 01.535, páginas 182-184 de la póliza de [Condominio Del Parque].

12. […]

13. CASA tenía el deber de mantener vigente una póliza de seguro con la Corporación del Fondo del Seguro del Estado que cubriera a todos los empleados a quienes designara para realizar labores y/o servicios en el [Condominio Del Parque], de conformidad con lo pactado en el Contrato de Administración, Limpieza y Mantenimiento suscrito entre el [Condominio Del Parque] y CASA.

14. Sin embargo, al momento del accidente ocurrido el 7 de abril de 2014, […] CASA no tenía póliza de seguro vigente con la Corporación del Fondo del Seguro del Estado.

15. Por tal razón, la Corporación del Fondo del Seguro del Estado determinó que CASA era un Patrono No Asegurado para efectos de la reclamación incoada a raíz del accidente [de] trabajo que sufrió el Sr. José A. Carrasquillo López el 7 de abril de 2014.

16. El [Condominio del Parque] tampoco tenía una póliza de seguro vigente con la Corporación del Fondo del Seguro de Estado al momento del accidente que sufrió el Sr. José A. Carrasquillo mientras trabajaba como empleado de limpieza en el [Condominio Del Parque], el 7 de abril de 2014.

17. La póliza núm. CPP-000631442-3/000 contiene el endoso identificado como *"Contingent Employer's Liability Endorsement."* […]

Inconforme, la Peticionaria presentó una *Moción de reconsideración* en la que sostuvo que aquellos accidentes que se encuentren cobijados por otras pólizas (tal y como lo sería la cubierta de la CFSE), no se encuentran cubiertos por la póliza comercial de responsabilidad pública general que la aseguradora tenía vigente a la fecha del accidente que originó la controversia.[9] Sin embargo, el foro recurrido declaró *No Ha Lugar* la moción.

Como consecuencia, la Peticionaria recurrió ante el Tribunal de Apelaciones y señaló que el **foro primario debió**

---

[9] *Íd.*, págs. 488-504.

**considerar al Condominio del Parque como patrono estatutario del señor Carrasquillo López y que debió concluir que a este le aplicaban las disposiciones de la Ley del Sistema de Compensaciones por Accidentes del Trabajo.**[10] Además, sostuvo que erró el foro, pues debió aplicar la exclusión del *Stop Gap* contenida en la póliza del Condominio del Parque.

No obstante lo anterior, el foro apelativo intermedio confirmó la determinación del Tribunal de Primera Instancia. En síntesis, sostuvo que, contrario a la nueva Ley de Condominios de 2020, la Ley de Condominios de 2003 (la cual estaba vigente al momento de los hechos), era silente sobre la exigencia de poseer una póliza vigente de la CFSE. Añadió que el requerimiento de que un agente administrador mantenga una póliza en la CFSE era un requisito innovador de la Ley de Condominios de 2020.

Todavía inconforme, la Peticionaria presentó el recurso que nos ocupa y señaló los siguientes errores:

> **PRIMER ERROR:** Erró el Tribunal de Apelaciones al confirmar una sentencia que ignoró el lenguaje claro y expreso de una póliza de responsabilidad pública que excluye lesiones corporales objeto de la Ley del Sistema de Compensaciones por Accidentes del Trabajo; o que fueron mediante la prestación de servicios de limpieza y mantenimiento a las áreas comunes de un asegurado, por las cuales dicho asegurado pueda ser responsable ya sea como empleador o en cualquier otra capacidad.
> **SEGUNDO ERROR:** Erró el Tribunal de Apelaciones al confirmar una sentencia que interpreta que un condominio no está obligado a mantener una póliza por accidentes del trabajo bajo la Corporación del Fondo del Seguro del Estado e interpretar que las exclusiones en una póliza de responsabilidad pública comercial no le son aplicables a dicho accidente.

---

[10] *Íd.*, págs. 71-505.

Repasados los hechos pertinentes, procedemos a exponer la doctrina jurídica atinente a la controversia planteada.

## II

En aras de resolver la presente controversia, en primer lugar, debemos exponer la raíz de la figura del patrono estatutario y su razón de ser.

## A. La Ley Núm. 45 y el patrono estatutario

La Ley Núm. 45, *supra*, establece un sistema estatal de seguro compulsorio para todos los patronos, con el fin de proveer diversas protecciones y beneficios para los obreros que sufren accidentes en su empleo.[11] Así, el derecho del empleado a recibir una compensación de la CFSE surge independientemente de si medió o no negligencia suya o del patrono.[12]

Para lograr articular el sistema compensatorio, el Art. 17 de la Ley Núm. 45, *supra*, obliga a todo patrono a asegurar a sus propios empleados con la CFSE.[13] Sin embargo, esa disposición que, a su vez contiene lo que conocemos como la "cláusula de contratista" (*contractor-under*), no solo obliga al patrono a asegurar a sus propios empleados, sino que le **exige de forma subsidiaria asegurar a los trabajadores de los patronos con quienes ajustó o contrató y los de un**

---

[11] *Guzmán Cotto v. ELA*, 156 DPR 693, 727-728 (2002).

[12] *Íd.*, pág. 729.

[13] 11 LPRA sec. 20.

**contratista o subcontratista independiente cuando estos no aseguren a sus propios empleados.**[14]

A cambio de procurar la cobertura para los empleados, el patrono asegurado —ya sea real o estatutario— goza de inmunidad absoluta contra demandas por daños y perjuicios, incluidas aquellas que surjan debido a su negligencia crasa.[15] En ese supuesto, no se trata de una defensa disponible para el patrono, sino de la inexistencia de una causa de acción en daños y perjuicios en su contra como resultado de la exclusividad del remedio provisto por la Ley Núm. 45, *supra*.[16] Además, "[e]l pago de ese seguro por el contratista, el subcontratista, el principal, o el dueño de la obra, inmuniza a todos los patronos contra acciones de daños por los empleados o por el Fondo".[17]

Nuestra jurisprudencia ha reconocido la coexistencia de la figura del patrono real y la figura del patrono estatutario. Ese reconocimiento se ha dado "dentro del contexto de un contrato o subcontrato de obra o de servicios, y sólo para aquellos dueños de obra, principales contratistas o subcontratistas que tuvieran —con

---

[14] *SLG Ortiz Jiménez v. Rivera Núñez*, 194 DPR 936 (2016); *Martínez v. Bristol Myers, Inc.*, 147 DPR 383, 396 (1999).

[15] *SLG Ortiz Jiménez v. Rivera* Núñez, supra, pág. 942; Hernández *Sánchez v. Bermúdez & Longo, S.E.*, 149 DPR 543 (1999).

[16] *López Cotto v. Western Auto*, 171 DPR 185, 194 (2007).

[17] *SLG Ortiz Jiménez v. Rivera* Núñez, supra, pág. 942; *Vda. de Costas v. PR Olefins*, 107 DPR 782, 785 (1978).

relación al trabajador lesionado— la obligación legal común de asegurarlo con [la CFSE]".[18]

La importancia de ambas figuras resalta cuando, dentro de la realización de una misma obra o servicio en particular, existen múltiples patronos a lo largo de la misma cadena contractual. **En ausencia de un nexo jurídico obrero-patronal que relacione al patrono real del obrero con el que invoca la inmunidad patronal, estaremos ante un tercero desprovisto de la protección estatutaria.**[19] Por lo tanto, determinar si un demandado es un patrono estatutario es una conclusión mixta de hecho y de derecho que **dependerá fundamentalmente de las relaciones contractuales entre este y el patrono real de los empleados.**[20] No obstante, es menester recalcar que, bajo ninguna premisa podrá considerarse al dueño de la obra, o contratante principal, como un tercero.[21]

Un patrono estatutario goza de la misma inmunidad que la Ley Núm. 45, *supra*, le confiere al patrono real en dos escenarios: (1) cuando el patrono real ha asegurado ante la CFSE a los empleados que realizarán labores para el patrono estatutario; y (2) cuando el patrono estatutario ha asegurado ante la CFSE a los empleados que el patrono real no haya asegurado con anterioridad.[22]

---

[18] *SLG Ortiz Jiménez v. Rivera* Núñez, supra, pág. 942; *Santiago Hodge v. Parke Davis Co.*, 126 DPR 1, 11 (1990).

[19] *Torres Solís et al. v. AEE et als.*, 136 DPR 302, 310 (1994).

[20] *Íd*. Véase, además *Lugo Sánchez v. AFF*, 105 DPR 861, 865-866 (1977).

[21] *Martínez Rodríguez v. Bristol Myers*, supra, pág. 403.

[22] *Íd.*, pág. 397.

No obstante lo anterior, la Ley Núm. 45, *supra*, es clara en las consecuencias que han de enfrentar aquellos patronos que, en violación, incumplan con mantener sus pólizas vigentes. En lo pertinente, en su Art. 13 reza lo siguiente:

> Si **cualquier patrono de los comprendidos en esta Ley** dejare de asegurar el pago de compensaciones por accidentes del trabajo de acuerdo con el mismo, cualquier obrero o empleado perjudicado o sus beneficiarios pueden proceder contra tal patrono radicando una petición para compensación ante la Comisión Industrial y, además, **pueden ejercitar una acción contra el patrono por daños y perjuicios, lo mismo que si esta Ley no fuera aplicable**". (Negrillas suplidas).[23]

Expuesto lo anterior, nos queda meridianamente claro que el elemento crucial para que una persona natural o jurídica se convierta en patrono estatutario será la relación contractual entre este y el patrono real del empleado. Ahora bien, será imprescindible tener como criterio rector que "[l]o que determina si un patrono queda o no sujeto a las disposiciones de la Ley Núm. 45, *supra*, es que esté trabajando en un negocio o negocios en los cuales tenga que utilizar obreros".[24] Así, el empleado de un patrono directo se convierte en empleado del patrono estatutario. Como consecuencia de ello, este último viene obligado a protegerlo ante la CFSE.

**B.  El contrato de seguro**

La segunda controversia que debemos atender se centra propiamente en el contrato de seguro. En Puerto Rico, el

---

[23] 11 LPRA sec. 16.

[24] *Morales Cordero v. Comisión Industrial*, 88 DPR 670 (1963).

negocio de los seguros está investido de un gran interés público, esto debido a la importancia, complejidad y efecto en la economía y estabilidad de la sociedad que este representa.[25] La industria de los seguros está regulada por la Ley Núm. 77 de 19 de junio de 1957, según enmendada, conocida como el *Código de Seguros de Puerto Rico* (Código de Seguros), 26 LPRA sec. 102. Allí se define seguro como aquel "contrato mediante el cual una persona se obliga a indemnizar a otra o a pagarle o a proveerle un beneficio específico o determinable al producirse un suceso incierto previsto en el mismo".

Por otro lado, el Código de Seguros dispone que el contrato de seguro deberá interpretarse "a base del conjunto total de sus términos y condiciones, según se expresen en la póliza y según se hayan ampliado, extendido, o modificado por aditamento, endoso o solicitud adherido a la póliza y que forme parte de ésta".[26] Así, cuando los términos, condiciones, exclusiones y limitaciones del contrato de seguros son claros y específicos, y no dan margen a diferentes interpretaciones, se deben hacer valer de conformidad con la voluntad de las partes contratantes.[27]

Ahora bien, si los términos de la póliza son claros, específicos y ausentes de ambigüedad, su cumplimiento será obligatorio, pues el contenido del contrato constituye la **ley**

[25] *Barreto Nieves v. East Coast Water Sports*, 2024 TSPR 40; *Consejo de Titulares v. MAPFRE*, 208 DPR 761, 773 (2022); *Maderas Tratadas v. Sun Alliance et al.*, 185 DPR 880, 896 (2012).

[26] 26 LPRA sec. 1125.

[27] *López v. Atlantic Southern Ins. Co.*, 158 DPR 562, 569 (2003).

**entre las partes.**[28] Los términos de una póliza se reputarán claros cuando su lenguaje sea específico, cuando no dé lugar a dudas o cuando no sea susceptible a distintas interpretaciones.[29] A su vez, "los términos de las pólizas de seguro deben ser generalmente entendidos en su más corriente y usual significado, sin atender demasiado al rigor gramatical, sino al uso general y popular de las voces".[30]

Si bien es cierto que el propósito de todo contrato de seguros es la indemnización y protección en caso de producirse el suceso incierto previsto en el mismo,[31] **al determinar cuáles son los riesgos cubiertos por una póliza de seguro es necesario considerar si en el contrato figura una cláusula de exclusión.**[32]

### i. Cláusulas de exclusión

Esta Curia ha expresado que "un seguro no responde por toda gestión imaginable del asegurado que pueda causar daño a terceros".[33] Las cubiertas se circunscriben a "[d]eterminadas actividades específicamente delimitadas en la póliza conjuntamente con las exclusiones allí dispuestas, donde se exceptúan ciertas actividades por las que no viene obligado a

---

[28] *San Luis Center Apts. v. Triple-S*, 208 DPR 824, 832 (2022); *Echandi Otero v. Stewart Title*, 174 DPR 355, 369 (2008).

[29] *San Luis Center Apts. v. Triple-S*, *supra*, pág. 833.

[30] *Echandi Otero v. Stewart Title*, *supra*, pág. 370.

[31] Art. 11.250 del Código de Seguros, *supra*.

[32] *Echandi Otero v. Stewart Title*, *supra*, pág. 370.

[33] *WMM v. Puerto Rico Christian School, Inc.*, 211 DPR 871 (2023), citando a *Maderas Tratadas v. Sun Alliance et al.*, *supra*, pág. 900.

indemnizar".[34] Siendo así, para precisar el alcance de la protección que ofrece una póliza, debemos evaluar si el contrato contiene cláusulas de exclusión que descarte de la cubierta determinados eventos, riesgos o peligros.[35]

**Las cláusulas de exclusión tienen el propósito de limitar la cubierta de una póliza al disponer que el asegurador no responderá por ciertos eventos, riesgos o peligros allí contenidos.**[36] En ese contexto, hemos resuelto que "[l]as exclusiones se han de interpretar restrictivamente a favor del asegurado, para así cumplir con el propósito de todo seguro de ofrecer la mayor protección a la persona asegurada".[37]

Por último, hemos expresado que se desfavorece el uso de estas cláusulas, puesto que el fundamento principal de un seguro es proveer protección al asegurado.[38] Debido a ello, los tribunales interpretaremos las referidas cláusulas de exclusión restrictivamente contra el asegurador. Sin embargo, hemos reiterado que, en aquellos casos en los que las cláusulas de exclusión sean claras y apliquen a determinada

---

[34] *Maderas Tratadas v. Sun Alliance et al.*, *supra*, pág. 900.

[35] *Rivera Matos et al. v. Triple-S et al.*, 204 DPR 1010, 1021 (2020).

[36] *Maderas Tratadas v. Sun Alliance et al.*, *supra*,pág. 889; *Echandi Otero v. Stewart Title*, *supra*, pág. 370.

[37] *Serrano Picón v. Multinational Life Insurance Company*, 212 DPR 981 (2023). Véase, también, R. Cruz, *Derecho de Seguros*, San Juan, Pubs. JTS, 1999, pág. 167.

[38] *Maderas Tratadas v. Sun Alliance et al.*, *supra*, pág. 899.

situación, "[l]a aseguradora no será responsabilizada por aquellos riesgos expresamente excluidos".[39]

### ii. Pólizas de responsabilidad comercial general (CGL)

Entre los diferentes tipos de seguro se distinguen, por un lado, aquellos que van dirigidos a resguardar aspectos personales o pérdidas a la propiedad del propio asegurado, a diferencia de los seguros que le ofrecen protección frente a reclamaciones instadas en su contra por terceros que han sufrido daños por su causa.[40] Esta última modalidad, conocida como seguro de responsabilidad pública o civil, tiene como fin primordial "garantizar al asegurado contra la responsabilidad civil en que pueda incurrir ante terceros por actos de los que sea legalmente responsable".[41] En otras palabras, **el asegurador se compromete, conforme a las condiciones estipuladas en el contrato, a indemnizar a un tercero** por aquellos daños causados por el asegurado.

Como regla general, las pólizas de responsabilidad comercial general o *commercial general liability* (CGL, por sus siglas en inglés) -como la emitida por la Peticionaria a favor del Condominio Del Parque- contienen una exclusión categórica de cubierta de cualquier reclamación que esté garantizada por la Ley Núm. 45, *supra*. Esto se debe a que las CGL están destinadas, en general, a **proteger a un patrono**

---

[39] *Maderas Tratadas v. Sun Alliance et al.*, *supra*, págs. 899-900; *Echandi Otero v. Stewart Title*, *supra*, pág. 371.

[40] 9 Couch on Ins. sec. 129.1.

[41] *Quiñones López v. Manzano Pozas*, 141 DPR 139 (1996), citando a J. Castelo Matrán, *Diccionario Mapfre de Seguros*, Madrid, Ed. Mapfre, 1988, pág. 264.

**asegurado contra la responsabilidad por pérdidas a terceros que surjan de la operación de su negocio.**[42]

Como corolario, debido a que la expectativa es que los patronos cumplan con su obligación legal de tener un seguro de compensación para sus trabajadores, las lesiones que sufran los empleados en la ejecución de sus labores, de ordinario, están excluidas de la cobertura.[43] Sobre este particular, en otras jurisdicciones se ha reconocido como un medio para alentar a los asegurados a obtener una cobertura adecuada de compensación para sus trabajadores que, el propósito de las pólizas CGL, no incluya brindar cobertura por lesiones sufridas por trabajadores lesionados.[44]

En otras instancias, patronos estatutarios han sido tratados de manera idéntica a los patronos reales en relación con las cláusulas de exclusión de empleados.[45] La lógica de la referida exclusión en las pólizas CGL es sencilla: **la única cobertura prevista, y por la cual se ha pagado la prima, es la responsabilidad del asegurado frente al público, a diferencia de la responsabilidad frente a los empleados del asegurado estén o no estén protegidos por la ley de compensación laboral.**[46]

Por ello, estas exclusiones de empleados rechazan la responsabilidad al asegurador de indemnizar a los empleados

---

[42] 9 Couch on Ins. sec. 129.2.

[43] *Íd*. sec. 129.7.

[44] *Brown v. Indiana Ins. Co.*, 184 S.W.3d 528, 534-35 (Ky. 2005).

[45] *Dodge v. Fidelity & Cas. Co. of N.Y.*, 424 So. 2d 39 (Fla. 5th DCA).

[46] *Fla. Ins. Guar. Ass'n v. Revoredo*, 698 So. 2d 890 (Fla. Dist. Ct. App. 1997).

por la obligación del patrono de responder a la familia del

empleado. Otras jurisdicciones han llegado a la misma

conclusión.[47]

### iii.    Los endosos contingentes (*stop gaps*)

Expuesto lo anterior, nos resta exponer la normativa

referente a los endosos contingentes, también conocidos como

"*stop gaps*". En primer lugar, el profesor Jeffrey E. Thomas

describe la **función de los endosos** de la siguiente forma:

> An endorsement is a written document attached to an insurance policy that modifies the policy by changing the coverage provided by the policy. Also known as a "rider" "addendum", or "attachment", an endorsement can add coverage for acts or things not covered by the original policy, limit or subtract coverage, add or remove exclusions or conditions, or otherwise modify the policy. Endorsements can be added at the inception of the policy or later during the term of the policy, although consideration will be required for a change in the policy's coverage after the policy is issued. If the endorsement is added after the original policy has been issued, the endorsement will typically state its effective date, the insured's name, and any change in premium resulting from the inclusion of the endorsement.[48]

Conforme a lo anterior, la función de los endosos en

el campo de los seguros es fundamental para personalizar las

pólizas. Estos permiten que las compañías aseguradoras puedan

delimitar los términos y condiciones de las pólizas a las

necesidades específicas de sus clientes y, a su vez, las

---

[47] *Véanse*: *Weger v. United Fire & Cas. Co.*, 796 P.2d 72 (Colo. Ct. App. 1990); *Tri-State Constr., Inc. v. Columbia Cas. Co./CNA*, 39 Wash. App. 309, 692 P.2d 899 (Wash. Ct. App. 1984) (ambos sostienen que las disposiciones de dichas exclusiones de empleados excluían de responsabilidad al asegurador de indemnizar al asegurado a pesar de que el patrono asegurado no había asegurado el pago de compensación para el empleado lesionado).

[48] Jeffrey E. Thomas, *New Appleman on Insurance Law Library Edition* sec. 1.07[8] (2009).

aseguradoras limitan el riesgo en el que incurrirán en una eventualidad.[49]

Ahora bien, en cuanto al trato que los foros judiciales le han dado a los *Stop Gaps*, puntualizamos que en el Tribunal Supremo de California se explicó lo siguiente:

> Employers' liability insurance is traditionally written in conjunction with workers' compensation policies, and is **intended to serve as a "gap-filler"**, providing protection to the employer in those situations where the employee has a right to bring a tort action, despite the provisions of the workers' compensation statute, or where the employee is not subject to the workers' compensation law. Generally, these two kinds of coverage are mutually exclusive. (Negrilla Suplida).[50]

De modo similar, en el Tribunal Supremo de West Virginia se expuso que "[a] **'stop gap employers' liability policy' exists to cover claims made against a business by injured employees whose claims are not generally compensable under the workers' compensation system**". (Negrilla Suplida).[51]

Previo al caso que nos ocupa, esta Curia no se había expresado en torno al referido endoso. Distinto ha sido el caso en el Tribunal de Apelaciones, que tuvo la oportunidad en dos instancias de expresarse sobre los *Stop Gaps*. En específico, se trata de los casos *Álamo Alvarado v. Lago Construction, Inc.*, KLCE0700675 y *Álamo Alvarado v. Lago Construction, Inc.*, KLAN200800253.

---

[49] *Íd.*

[50] *Producers Dairy Delivery Co. v. Sentry Ins. Co.*, 41 Cal. 3d 903, 226 Cal. Rptr. 558, 718 P.2d 920 (1986).

[51] *Luikart v. Valley Brook Concrete & Supply, Inc.*, 216 W. Va. 748, 613 S.E.2d 896 (2005).

Los casos citados trataban de un obrero que sufrió unos daños por un accidente laboral y, como resultado de ello, demandó a la compañía aseguradora de su patrono (Triple-S). En aquella ocasión, Triple-S presentó el mismo argumento que hoy nos plantea la Peticionaria. En esencia, adujo que la póliza de seguro suscrita por el patrono no cubría los daños del obrero porque, según la Ley Núm. 45, *supra,* la corporación constructora no era un patrono asegurado.

De forma similar al caso ante nos, la póliza disponía como requisito el cumplimiento con la Ley Núm. 45, *supra*. Es decir, que el patrono cumpla con su deber de estar asegurado con la CFSE, para así cubrir al obrero empleado por aquellas lesiones o muerte que haya sufrido, pero que no tenga derecho a recibir beneficios por ley.

En aquella ocasión, el foro apelativo intermedio señaló que el *Stop Gap* constituía un seguro de responsabilidad patronal a favor de los empleados para situaciones de accidentes de trabajo y que **en Puerto Rico los seguros de este tipo generalmente son desplazados por la legislación sobre compensaciones por accidentes del trabajo.** A esos efectos, expuso que **los *Stop Gaps* tienen el propósito de suplementar la protección provista a los empleados por los sistemas de compensación por accidentes del trabajo y de proveerles cubierta para aquellas lesiones no cubiertas por esos sistemas.**

Así, este tipo de endoso es de **naturaleza subsidiaria (y contingente),**[52] por lo que es natural que exija como condición para la cubierta que el patrono mantenga a los empleados asegurados bajo el sistema de compensación por accidentes del trabajo.[53] **Se trata de una cubierta diseñada precisamente para tener el alcance de complementar los vacíos de la Ley Núm. 45,** *supra*.[54]

### III

La médula de la controversia estriba en un condominio residencial que contrató a una compañía para que se encargara de la administración, limpieza y mantenimiento de las áreas comunes. En dicho contrato, se estableció que los empleados que el contratista utilizase debían estar asegurados contra accidentes del trabajo ante la CFSE y que, en virtud de esa obligación, el contratista debía relevar al condominio. Sin embargo, para la fecha del accidente que originó el caso de autos, ni el condominio ni el contratista contaban con las pólizas de la CFSE.

Expuesto lo anterior, nos corresponde responder la siguiente interrogante: ¿Tenía el Consejo de Titulares del Condominio del Parque la obligación de mantener una póliza con la CFSE? **Concluimos que sí.** Veamos.

Los foros *a quo* erradamente concluyeron que el Condominio del Parque es un **tercero** según comprendido por el

---

[52] Según el diccionario de la Real Academia Española (RAE), una de la acepciones del término "contingente" se refiere a "[q]ue puede suceder o no suceder". https://dle.rae.es/contingente?m=form (última visita 13 de junio de 2024).

[53] *Álamo Alvarado v. Lago Construction, Inc.*, 2008 WL 5740906 (2008).

[54] *Íd.*

Art. 29 de la Ley Núm. 45, *supra*. Ambos foros descansaron en una premisa equivocada para sustentar sus determinaciones. En específico, sostuvieron que era imposible concluir que CASA, como Agente Administrador del Condominio del Parque, tuviera la obligación de mantener una póliza vigente con la CFSE, pues, según determinaron, a CASA no le aplicaba la Ley de Condominios del 2020. Sin embargo, los foros *a quo* no consideraron que, en el caso de autos, CASA llegó a tener una póliza de la CFSE. El detalle fue que la dejaron vencer por incumplimiento con los pagos.

La controversia genuina y la que los foros recurridos parecen obviar en su totalidad es si el Consejo de Titulares, como persona jurídica que subcontrató los servicios de CASA, debía ser considerada como patrono estatutario del señor Carrasquillo López.

Como señalamos anteriormente, el elemento crucial para determinar si una persona, natural o jurídica, en efecto debe considerarse como patrono estatutario es la relación contractual con el patrono directo del trabajador y la obligación legal que tiene de asegurar a los empleados de su contratista cuando éste no los tenga asegurados ante la CFSE.

**Reiteramos, la figura del patrono estatutario surge en situaciones en las que exista una relación contractual de este con el patrono real de los trabajadores que trabajan para él.** En síntesis, el patrono estatutario tiene una relación directa tanto con el patrono real como con sus trabajadores. Con el patrono real, porque media un contrato

de servicios y con los trabajadores, porque estos realizan sus labores en la planta física del patrono estatutario.

No obstante lo anterior, el Tribunal de Apelaciones descansa en el Art. 49 de la Ley de Condominios de 2020 para fundamentar que el Condominio del Parque debe considerarse como un tercero y no un patrono estatutario. Lo cierto es que, en esa disposición se inserta expresamente la obligación del Agente Administrador de cumplir con la Ley Núm. 45, *supra*. En específico, el artículo dispone que el Consejo de Titulares deberá escoger un Agente Administrador quien, a su vez, deberá cerciorarse que en todo contrato de administración el condominio cuente con una "**[p]óliza vigente obrero-patronal expedida por la Corporación del Fondo del Seguro del Estado**".[55]

A pesar de que lo anterior es un punto medular en el razonamiento del foro apelativo intermedio, nos resulta inconsecuente. Según se desprende del expediente, el Consejo de Titulares del Condominio del Parque cumplió con la contratación de un Agente Administrador al cual se le requirió una póliza de la CFSE, a saber, CASA.

Por otro lado, en cuanto al "tercero" que alude la Ley Núm. 45, hemos expresado que se debe tratar de una persona extraña, ajena y separada de la interacción jurídica que relaciona al patrono indirecto y al patrono real con la CFSE en la obligación legal común de asegurar a sus

---

[55] 31 LPRA sec. 1922u.

obreros.[56] En esa dirección, hemos resuelto que "[b]ajo ninguna premisa puede considerarse [como] tercero o extraño causante de daño al patrono a quien la Ley expresamente dispensa de la obligación de asegurar y quien es parte regulada por el esquema de seguro exclusivo compulsorio".[57]

Ciertamente, los condominios están obligados a llevar a cabo obras de mantenimiento y conservación, las cuales serán administradas por la Junta de Directores y los entes que, a su vez, estos contraten. Por décadas, en Puerto Rico los condominios han contratado trabajadores y compañías para esos fines. Siendo así, **los condominios no están exentos de asegurar, como dueño de una obra o principal a todos los obreros que contrate para las labores de limpieza y mantenimiento, ya sea directamente o bajo un contratista o subcontratista, como bien lo dispone el Art. 17 de la Ley Núm. 45,** *supra*.

Por todo lo anterior, concluimos que, lejos de ser un tercero, **el Condominio del Parque debe ser considerado como el patrono estatutario del señor Carrasquillo Pérez y, debido a que este incumplió con su obligación de asegurar a los trabajadores de CASA, debe considerarse para todos los efectos legales como un patrono no asegurado.** Es decir, se convierte en un patrono estatutario no asegurado sujeto a los dos remedios que la ley reconoce al empleado lesionado para tales casos, la compensación de la Comisión Industrial y la acción civil por los daños y perjuicios causados.

---

[56] *Martínez Rodríguez v. Bristol Myers*, *supra*, pág. 403.

[57] *Íd.*, citando a *Lugo Sánchez v. AFF*, *supra*, pág. 867).

Resuelto lo anterior y dispuesto que el Condominio del Parque es en efecto el patrono estatutario del señor Carrasquillo Pérez, nos resta determinar los efectos de la cláusula de exclusión y el *Stop Gap* en la cubierta provista por Seguros Múltiples para el condominio.

En primer lugar, es menester señalar que las Recurridas señalaron en su *Oposición a moción de sentencia sumaria*, lo siguiente: "[c]oincidimos con la apreciación de la codemandada, CSM en cuanto a que **los términos de los contratos de seguro suscritos** a favor del Condominio Del Parque 352 (Póliza núm. CPP-631442-3/000) y del Condominio Del Parque 352 y de CASA (Póliza núm. MPC-000641242-3/000) por dicha aseguradora **son claros**". (Negrilla suplida).

En vista de lo anterior, estamos obligados a partir del hecho de que nos enfrentamos a un contrato de seguro claro y libre de ambigüedades. No cabe duda de que, como regla general, las cláusulas de exclusión son desfavorecidas y deben interpretarse de manera restrictiva en contra del asegurador, cuando sus términos son claros y aplican a una situación determinada, deben interpretarse según su significado común y no de manera rebuscada.

Ahora bien, en lo pertinente, ambas pólizas contenían las siguientes **cláusulas de exclusión:**

> [2. Exclusions:]
> [**This insurance does not apply to:**]
> d. **Workers Compensation and Similar Laws**
> Any obligation of the insured under a workers compensation, disability benefits or unemployment compensation law or any similar law.
> e. Employer's Liability
> "Bodily Injury" to:

(1) An "employee" of the insured arising out of and in the course of:
a. Employment by the insured: or
b. Performing duties related to the conduct of the insured's business
(2) The spouse, child, parent, brother or sister of that "employee" as a consequence of paragraph (1) above.
This exclusion applies:
(1) Whether the insured may be liable as an employer or in any other capacity: and;
(2) To any obligation to share damages with or repay someone else who must pay damages because of the injury.
This exclusion does not apply to liability assumed by the insured under an "insured contract...".

Según la normativa expuesta, al evaluar la cláusula de exclusión de forma global, integral y con particular atención al lenguaje utilizado, encontramos que esta excluye expresamente los daños o pérdidas causados por lesiones corporales que sufra un empleado de los asegurados o cuando un empleado realice labores relacionadas o conducentes a negocios o en beneficio de los asegurados.

En vista de ello, nos resulta incuestionable que la cláusula de exclusión es clara y la Peticionaria no responde por los daños que deba cubrir la póliza de la CFSE. Según mencionáramos, el Condominio del Parque, como patrono estatutario del señor Carrasquillo Pérez, tenía una obligación subsidiaria de asegurar a los empleados de CASA ante la CFSE y no lo hizo.

Por otro lado, tomando en consideración que el *Stop Gap* fue suscrito entre las partes posterior a la póliza CGL, veamos lo que dispone:

The **insurance applies:**
a. If the **insured complies and maintains compliance with the provisions of the Workmen's**

**Accident Compensation Act of Puerto Rico** and insures his workmen or employees in the State Insurance Fund.
b. If such injury, disease or death is sustained by such employee but he is not entitled to receive benefits by such law. (Negrilla Suplida).

Conforme al lenguaje anterior, la aplicabilidad del endoso o *Stop Gap* estaba sujeta a que el Condominio del Parque cumpliera con las disposiciones de la Ley Núm. 45, *supra*, y asegurara a sus trabajadores o empleados con una póliza de la CFSE. Así, contrario a la postura del Condominio del Parque que señala que la Peticionaria estaba obligada a responder, el *Stop Gap* suscrito entre la Peticionaria y el Condominio del Parque es un endoso de carácter subsidiario y contingente para el cual el condominio no cumplió con el requisito fundamental: tener una póliza vigente bajo la CFSE.

**En vista de que el Condominio del Parque incumplió con su deber de asegurar al señor Carrasquillo Pérez, y de que el *Stop Gap* sirve exclusivamente para cubrir el *gap* (o espacio) que no sea cubierto por la póliza de la CFSE, la póliza resulta inaplicable y la Peticionaria no deberá responder.**

**IV**

Por los fundamentos expuestos, se revocan las sentencias de los foros *a quo* y se declara *Ha Lugar* en su totalidad la moción de sentencia sumaria presentada por la Peticionaria, Cooperativa de Seguros Múltiples de Puerto Rico. Devolvemos el caso al Tribunal de Primera Instancia para que continúe con los procedimientos de conformidad con lo aquí resuelto.

Se dictará Sentencia de conformidad.


                                    Erick V. Kolthoff Caraballo
                                          Juez Asociado

EN EL TRIBUNAL SUPREMO DE PUERTO RICO

| | | |
|---|---|---|
| Carmen D. Carrasquillo Pérez, et al.<br><br>      Recurridos<br><br>          v.<br><br>Asociación y/o Consejo de Titulares del Condominio Parque 352 et al.<br><br>      Recurridos<br><br>Cooperativa de Seguros Múltiples de Puerto Rico<br><br>      Peticionaria | CC-2023-0597 | Certiorari |

SENTENCIA

En San Juan, Puerto Rico, a 16 de septiembre de 2024.

Por los fundamentos expuestos en la Opinión que antecede la cual se hace formar parte íntegra de la presente, se revocan las sentencias de los foros *a quo* y se declara *Ha Lugar* en su totalidad la moción de sentencia sumaria presentada por la Peticionaria, Cooperativa de Seguros Múltiples de Puerto Rico. Devolvemos el caso al Tribunal de Primera Instancia para que continúe con los procedimientos de conformidad con lo aquí resuelto.

Así lo pronunció, manda el Tribunal y certifica el Secretario del Tribunal Supremo. El Juez Asociado señor Colón Pérez no intervino.

Javier O. Sepúlveda Rodríguez
Secretario del Tribunal Supremo