Estado Libre Asociado de Puerto Rico
TRIBUNAL DE APELACIONES
PANEL V

| | | |
|---|---|---|
| VALERIE PAGÁN SALELLAS<br><br>Apelante<br><br>v.<br><br>MADAQUÍ, INC.; MAPFRE-PRAICO INSURANCE COMPANY; JINIYENDALIRIS LORENZO SUÁREZ, MADAQUÍ, INC. (h/n/c MERODEA) Y OTROS<br><br>Apelada | KLAN202400721 | Apelación Procedente del Tribunal de Primera Instancia, Sala de HUMACAO<br><br>Caso Núm.: HU2023CV00787<br><br>Sobre: Daños y Perjuicios |

Panel integrado por su presidente el Juez Hernández Sánchez, el Juez Bonilla Ortiz y la Jueza Mateu Meléndez.

Mateu Meléndez, Jueza Ponente

**SENTENCIA**

En San Juan, Puerto Rico, a 18 de octubre de 2024.

El 29 de julio de 2024, Valerie Pagán Salellas (en adelante la apelante) compareció ante este Tribunal de Apelaciones mediante *Apelación Civil* en la cual nos solicita la revocación de la *Sentencia Parcial* emitida en el pleito de epígrafe el 10 de junio de 2024, notificada el día 11. Mediante el aludido dictamen, el Tribunal de Primera Instancia, Sala Superior de Humacao (en adelante, TPI o foro primario) decretó la desestimación de la causa de acción instada por ella contra Mapfre-Praico, Insurance (en adelante, MAPFRE).

Frente a la sentencia dictada, la apelante sometió *Moción de Reconsideración*. Esta fue denegada vía *Resolución* del 27 de junio de 2024, notificada el 28.

Evaluado el legajo apelativo, y por las razones que más adelante consignamos, resolvemos **confirmar** el dictamen apelado.

Número Identificador

SEN2024 _____

-I-

El caso de autos trata de una *Demanda* presentada por la apelante contra Madaqui, Inc.; Wyndham Puerto Rico Partners, LLC; MAPFRE y varios demandados designados con nombres ficticios. Allí, se alegó que el 11 de junio de 2022, la codemandada Madaqui, Inc. y el Hotel Wyndham de Palmas del Mar celebraron el evento "Me, Myself and I" abierto al público en general. En dicha fecha, según alegó la apelante, esta participó y se registró en la actividad *Gravity Fit*, que consistía en el uso de un trampolín de salto en la modalidad de "zumba". La apelante alegó que la referida actividad no contó con una instrucción adecuada que protegiera al público o los invitados de peligro sobre su integridad corporal.

Según la apelante reclamó, a consecuencia de esta falta de instrucciones, sufrió un accidente que le causó fractura de la tibia, ruptura del menisco, desgarre de ligamento con consecuente reemplazo, herida, golpes, fractura y contusión. Igualmente, tuvo que ser intervenida quirúrgicamente, sobrellevó y sobrelleva tratamiento médico e inmovilización de una extremidad por tiempo significativo y no recuperará su movilidad óptima. Por estos daños y otros allí alegados, se reclamó compensación económica.

Habiéndose enmendado la demanda en dos ocasiones, el 23 de octubre de 2023, MAPFRE contestó la segunda demanda enmendada. Posteriormente, específicamente el 25 de abril de 2024, sometió *Moción de Desestimación y/o Sentencia Sumaria*. En este documento, reclamó que procedía la desestimación de la causa de acción en su contra, puesto que la póliza que emitió para el evento de "Me, Myself & I" contiene un endoso que excluye de la cubierta ""reclamaciones que surjan por "lesión corporal", "lesión personal" o "daño a la propiedad" sufrida por un "espectador" o "participante" mientras este participa o practica en un evento, juego, deporte, demostración, exhibición, carrera o espectáculo

cubierto por la póliza."" Así pues, planteó que, a los fines particulares de su escrito, no existía controversia genuina sobre los siguientes hechos:

a.  El 28 de septiembre de 2023 se radicó la Demanda Enmendada de epígrafe, donde se incluye como codemandado a MAPFRE PRAICO Insurance Company, entre otros, por entenderse que es la compañía de seguros que debe responder en daños y perjuicios a la Sra. Valerie Pagan Salellas por las alegadas acciones llevadas a cabo por MADAQUI, Inc., el 11 de junio de 2022. (Véase, SUMAC 15 ¶ 49).

b.  MADAQUI, Inc., es una corporación organizada bajo las leyes de Puerto Rico y su número de registro en el Departamento de Estado es el 321243. MADAQUI, Inc., también hace negocios bajo el nombre corporativo Merodea. (Véase SUMAC 15 ¶ 8, y SUMAC 40 ¶ 8).

c.  El 11 de junio de 2022, en el Hotel Wyndham Palmas del Mar Beach & Golf Resort se celebró la actividad "Me, Myself & I" organizada y patrocinada por MADAQUI, Inc., haciendo negocios como Merodea. (Véase SUMAC 15 ¶ 20, SUMAC 40 ¶ 21).

d.  El evento "Me, Myself & I" incluyó una serie de actividades y eventos de ejercicios, entre estas, una clase de "zumba en trampolín" o "rebote en trampolín" consistente en, entre otras cosas, saltar en dicho trampolín. (Véase SUMAC 15 ¶ ¶ 23-25).

e.  El 11 de junio de 2022, la Sra. Valerie Pagán Salellas se registró en el evento "Me, Myself & I" y, en particular se registró en la clase de "zumba en trampolín" o "rebote en trampolín". (Véase SUMAC 15 ¶ 26).

f.  Poco después de comenzar la actividad la demandante sintió dolor en su rodilla y vio cómo la misma hizo movimientos no naturales. La demandante tuvo que abandonar la actividad para buscar atención médica. (Véase SUMAC 15 ¶ 27).

g.  La demandante sufrió una fractura de la tibia, ruptura del menisco y rotura de ligamento en la rodilla afectada. (Véase SUMAC 15 ¶ 50).

h.  La demandante alega que los organizadores de la actividad "Me, Myself & I" fueron negligentes en no dar instrucciones a los participantes de la actividad de Zumba en trampolín sobre dicha actividad, ni en el uso o manejo del trampolín durante la actividad. (Véase SUMAC 15 ¶ ¶ 30 – 49)

i.  La demandante alega que los organizadores del evento no instruyeron o indicaron a los participantes sobre que hacía falta hacer estiramientos o calentamiento previo a la actividad y que los entrenadores no realizaron una evaluación inicial sobre la capacidad de los participantes previo a su participación en dicha actividad atlética. (Véase, SUMAC 15 ¶ ¶ 30 – 49).

j.  MAPFRE expidió la póliza 1100228005701 con efectividad del 9 de junio de 2022 al 12 de junio de 2022 a favor de MADAQUI Inc. (Véase, Anejo I, Copia Certificada de la Póliza 1100228005701).

k. La póliza 1100228005701 tiene cubierta de Responsabilidad Comercial General ("Comercial General Liability") y fue expedida en específico para proveer cubierta para el evento "Me, Myself & I" de meditación / yoga/ karma/ spinning/ "wellness" con fecha de sábado 11 de junio y domingo 12 de junio de 2022. Hora del sábado: 10:00 am a 4:00 pm, hora del domingo 7:00 am a 12:00 pm en el Wyndham Hotel, Palmas del Mar. (Véase, Anejo I, Copia Certificada de la Póliza 1100228005701 página 3 y 4).

l. La póliza 1100228005701 contiene el endoso A 06/22 el cual modifica la póliza y excluye de cubierta los daños causados a participantes como consecuencia de la participación de cualquier persona en competencias, eventos, juegos, deportes, demostraciones, exhibiciones, carreras o espectáculos que estuviesen cubiertos por la póliza. A esos efectos, la póliza dispone lo siguiente:

This policy does not provide coverage for 'bodily injury', 'property damage', or 'personal injury' to any 'participant' or 'spectator' arising out of;
(1) The practicing for or participation of any person in any contest, game, sport, demonstration, exhibition, race or show covered by this policy; or
(2)…
(3)…
(4)… The term 'participant' shall include athletes, sportsman or sportswoman, performers, stagehands, volunteers, drivers, set up crew, pit crew and other persons located in the pit area, security personnel, mechanics, stewards, officials or attendants, or any other person taking part in Paragraph 1, 2, 3 or 4 above". The term 'amusement device' shall include exposures such as; inflatable devices, mechanic bulls, amusement rides, flat rides, gravity rides, and vertical rides.

(Véase, Anejo I, Copia Certificada de la Póliza 1100228005701 página 15 y 16).

El 20 de mayo de 2024, la apelante presentó *Demandante- Oposición a Moción de Desestimación y/o Sentencia Sumaria (Entrada Núm. 47)* en la que expuso que la exclusión citada por MAPFRE no cumplía "con los requisitos de nuestro ordenamiento jurídico y ni siquiera [aparenta estar dirigida] a personas como la demandante, sino a eventos con machinas y descansa en lenguaje amplio de cláusulas coloquialmente llamadas "zafacón"." Específicamente, expuso que un estudio de la totalidad de la cláusula en controversia, así como la naturaleza del evento, llevaba a concluir que el *Endorsement A* en la que se encuentra esta, "gira más en torno a eventos de entretenimiento masivo como conciertos y circos, y busca excluir daños causados por dicho espectáculo. Así, planteó que la interpretación

propuesta por MAPFRE es irrazonable, debiéndose interpretar a favor del asegurado.

El 11 de junio de 2024, el TPI notificó la sentencia apelada. En esta, formuló las siguientes determinaciones de hechos:

1. El 28 de septiembre de 2023 se radicó la Demanda Enmendada de epígrafe, donde se incluye como codemandado a MAPFRE PRAICO INSURANCE COMPANY, entre otros.

2. MADAQUI, Inc., es una corporación organizada bajo las leyes de Puerto Rico y su número de registro en el Departamento de Estado es el 321243. MADAQUI, Inc., también hace negocios bajo el nombre corporativo Merodea.

3. El 11 de junio de 2022, en el Hotel Wyndham Palmas del Mar Beach & Golf Resort se celebró la actividad "Me, Myself & I" organizada y patrocinada por MADAQUI, Inc., haciendo negocios como Merodea.

4. El evento "Me, Myself & I" incluyó una serie de actividades y eventos de ejercicios, entre estas, una clase de "zumba en trampolín" o "rebote en trampolín" consistente en saltar en dicho trampolín.

5. El 11 de junio de 2022, la Sra. Valerie Pagán Salellas se registró en el evento "Me, Myself & I" y, en particular se registró en la clase de "zumba en trampolín" o "rebote en trampolín".

6. Poco después de comenzar la actividad, la Sra. Valerie Pagán Salellas sintió dolor en su rodilla y vio cómo la misma hizo movimientos no naturales.

7. La Sra. Valerie Pagán Salellas tuvo que abandonar la actividad para buscar atención médica.

8. La Sra. Valerie Pagán Salellas sufrió una fractura de la tibia, ruptura del menisco y rotura de ligamento en la rodilla afectada.

9. La Sra. Valerie Pagán Salellas alega que los organizadores de la actividad "Me, Myself & I" fueron negligentes al no dar instrucciones a los participantes de la actividad de Zumba en trampolín, ni en el uso o manejo del trampolín durante la actividad.

10. La Sra. Valerie Pagán Salellas alega que los organizadores del evento no instruyeron o indicaron a los participantes sobre que hacía falta hacer estiramientos o calentamiento previo a la actividad y que los entrenadores no realizaron una evaluación inicial sobre la capacidad de los participantes previo a su participación en dicha actividad atlética.

11. MAPFRE PRAICO INSURANCE COMPANY expidió la póliza 1100228005701 con efectividad del 9 de junio de 2022 al 12 de junio de 2022 a favor de MADAQUI Inc.

12. La póliza 1100228005701 tiene cubierta de Responsabilidad Comercial General ("Comercial General Liability") y fue

expedida en específico para proveer cubierta para el evento "Me, Myself & I" de meditación / yoga/ karma/ spinning/ "wellness" con fecha de sábado 11 de junio y domingo 12 de junio de 2022. Hora del sábado: 10:00 am a 4:00 pm, hora del domingo 7:00 am a 12:00 pm en el Wyndham Hotel, Palmas del Mar.

13. La póliza 1100228005701 contiene el endoso A 06/22, el cual modifica la póliza y excluye de cubierta los daños causados a participantes como consecuencia de la participación de cualquier persona en competencias, eventos, juegos, deportes, demostraciones, exhibiciones, carreras o espectáculos que estuviesen cubiertos por la póliza. En lo pertinente, la póliza dispone lo siguiente:

> This policy does not provide coverage for 'bodily injury', 'property damage', or 'personal injury' to any 'participant' or 'spectator" arising out of;
>
> (1) The practicing for or participation of any person in any contest, game, sport, demonstration, exhibition, race or show covered by this policy; or
> (2) …
> (3) …
> (4) …
> The term 'participant' shall include athletes, sportsman or sportswoman, performers, stagehands, volunteers, drivers, set up crew, pit crew and other persons located in the pit area, security personnel, mechanics, stewards, officials or attendants, or any other person taking part in Paragraph 1, 2, 3 or 4 above". The term 'amusement device' shall include exposures such as; inflatable devices, mechanic bulls, amusement rides, flat rides, gravity rides, and vertical rides.

Basándose en estas determinaciones, el foro primario concluyó que del lenguaje del endoso A 06/22 surgía que la acción de la apelante no estaba cubierta por la póliza expedida por MAPFRE. Ello así, pues tal endoso "contenido en la póliza excluye de la cubierta las alegaciones de daños físicos como consecuencia la participación de la demandante en una clase llamada Gravity Fit, consistente en "zumba en trampolín"." Por tal razón, tras exponer que no existía razón por la que posponer dictar sentencia parcial, declaró Ha Lugar la *Moción de Desestimación y/o Sentencia Sumaria* de MAPFRE y desestimó la Demanda en contra de la aseguradora.

En desacuerdo con lo resuelto, el 26 de junio de 2024, la apelante solicitó reconsideración de la *Sentencia Parcial*. Mediante *Resolución* del 27 de junio de 2024, notificada el 28, el TPI se negó a reconsiderar. Inconforme

aun, esta acudió ante nos mediante el recurso de epígrafe y realizó el siguiente señalamiento de errores:

*Primer error*

EL TRIBUNAL DE PRIMERA INSTANCIA ERRÓ AL DESESTIMAR LA ACCIÓN CONTRA MAPFRE-PRAICO INSURANCE COMPANY POR NO EXISTIR CUBIERTA BAJO LA PÓLIZA EXPEDIDA POR ELLA EN ESTE CASO.

*Segundo error*

EL TRIBUNAL DE PRIMERA INSTANCIA ERRÓ EN SU ANÁLISIS DEL LENGUAJE CONTENIDO EN EL "ENDOSO A 06/22" DE LA PÓLIZA EXPEDIDA POR MAPFRE-PRAICO INSURANCE COMPANY EN ESTE CASO, EN CONTRAVENCIÓN DEL DERECHO APLICABLE EN CUANTO A INTEPRETACIÓN DE PÓLIZAS DE SEGUROS Y EN CUANTO AL PROPIO TEXTO DEL ENDOSO.

*Tercer error*

EL TRIBUNAL DE PRIMERA INSTANCIA ERRÓ AL DISPONER QUE LA PÓLIZA EXPEDIDA POR MAPFRE-PRAICO INSURANCE COMPANY NO PROVEE CUBIERTA PARA LOS DAÑOS RECLAMADOS EN ESTE CASO EN CONTRAVENCIÓN DEL DERECHO APLICABLE.

Atendido el recurso, emitimos *Resolución* en la que concedimos término a la apelada para que someta su posición. En cumplimiento con ello, el 27 de agosto de 2024, MAPFRE compareció. Así pues, dado que contamos con la postura de todas las partes, damos por sometido el asunto y resolvemos.

**-II-**

*A.*

*La Sentencia Sumaria*

El mecanismo procesal de la sentencia sumaria dispuesto en la Regla 36 de Procedimiento Civil, 32 LPRA, Ap. V., R. 36, permite resolver los asuntos de aquellos litigios que no presentan controversias genuinas de hechos materiales y que, por consiguiente, no ameritan la celebración de un juicio. Cruz Velez v. CEE y otros, 206 DPR 694 (2021), al citar a Mejías et al. v. Carrasquillo et al., 185 DPR 288 (2012) y otros. Así pues, conforme la discutida regla, procede dictar sentencia sumaria si de las alegaciones, deposiciones y admisiones ofrecidas, más las declaraciones juradas y

cualquier otra evidencia presentada se acredita la inexistencia de una controversia real y sustancial sobre algún hecho esencial y material. Deberá, también, justificarse por el derecho aplicable. Id., mencionando a Bobé et al. v. UBS Financial Services, 198 DPR 6 (2017) y demás.

Por otro lado, la parte que se oponga a la moción de sentencia sumaria, deberá así hacerlo dentro del término de veinte (20) días desde su notificación, cumpliendo con los requisitos de ley. Así pues, deberá efectuar una exposición breve de las alegaciones, los asuntos litigiosos o en controversia. También, deberá hacer referencia a los párrafos enumerados por la parte promovente que entiende están en controversia y para cada uno, detallar la evidencia admisible que sostiene su impugnación. Véase, Regla 36.3(b) de Procedimiento Civil, 32 LPRA Ap. V, R. 36.3(b); Cruz Velez v. CEEy otros; *supra*; y SLG Zapata-Rivera v. J.F. Montalvo, 189 DPR 414, 432 (2013). Las meras afirmaciones no bastan. Meléndez González et al.v. M. Cuebas, 193 DPR 100, 136 (2015). Esto es así, ya que cualquier duda no es suficiente para derrotar una moción de sentencia sumaria, sino que tiene que ser una que permita concluir la existencia de una controversia real y sustancial sobre hechos relevantes y pertinentes. Abrams Rivera v. ELA, 178 DPR 914, 932 (2010). No obstante, el no presentarse oposición a una moción de sentencia sumaria no impide que el tribunal falle en contra del promovente de esta ya que esta "puede dictarse a favor o en contra del promovente, según proceda en derecho.". Audiovisual Lang. v. Sist. Est. Natal Hnos., 144 DPR 563, 575 (1997).

Así, al evaluar los méritos de una solicitud de sentencia sumaria un tribunal podrá dictar sentencia sumaria si de los documentos sometidos ante su consideración surge que no existe controversia real sustancial en cuanto a ningún hecho material y solo restaría por resolver una controversia estricta de derecho. Regla 36.3(e) de Procedimiento Civil, 32 LPRA Ap. V R 36.3(e). Por el contrario, no procederá una moción de

sentencia sumaria cuando (1) existan hechos materiales y esenciales controvertidos; (2) haya alegaciones afirmativas en la demanda que no han sido refutadas; (3) surja de los propios documentos que se acompañan con la moción una controversia real sobre algún hecho material y esencial; o (4) como cuestión de derecho, no proceda. Cruz Vélez v. CEE y otros; *supra.*

En cuanto a la revisión judicial de una determinación sobre sentencia sumaria, es meritorio señalar que los foros apelativos nos encontramos en la misma posición que el foro primario. Por ello, debemos regirnos por la Regla 36 de Procedimiento Civil y aplicar los criterios de esta. No obstante, no podemos tomar en consideración evidencia que las partes no presentaron ante el TPI. Tampoco podemos adjudicar los hechos materiales en controversia, por ser una tarea que le compete al foro de instancia luego de celebrarse un juicio. Meléndez González et al. v. M. Cuebas, *supra,* pág. 118.

*B.*

*El Código de Seguros y la interpretación de las cláusulas de una póliza de seguro*

El contrato de seguro es aquel acuerdo mediante el cual una persona se obliga a indemnizar a otra o a pagarle o proveerle un beneficio específico o determinable al producirse un evento incierto previsto en el mismo. Art. 1.020 del Código de Seguros, 26 LPRA sec. 102. Véase también, Carrasquillo Pérez v. Asociación y/o Consejo de Titulares del Condominio Parque 352, 2024 TSPR 101, 214 DPR ___. En este, el asegurador asume determinados riesgos a cambio del cobro de una prima o cuota periódica, en virtud de la que se obliga a responder por la carga económica que recaiga sobre el asegurado de ocurrir un suceso especificado en el contrato. ECP Incorporated v. OCS, 205 DPR 268, 269 (2020), citando a S.L.G. Francis-Acevedo v. SIMED, 176 DPR 372 (2009) y otros allí citados. Así pues, la función primordial de una póliza de seguro es establecer un mecanismo para transferir un riesgo y de esta manera proteger al asegurado de ciertos

eventos identificados en el contrato de seguros. Savary et al. v. Mun. Fajardo et al., 198 DPR 1014, 1023 (2017), citando a R.J. Reynolds v. Vega Otero, 197 DPR 699 (2017) y otros.[1]

El Código de Seguros de Puerto Rico, 26 LPRA sec. 101 *et seq.*, establece que todo contrato de seguro deberá interpretarse globalmente, a base del conjunto total de sus términos y condiciones, según se expresen en la póliza y según se hayan ampliado, extendido, o modificado por aditamento, endoso o solicitud adherido a la póliza y que forme parte de ésta. 26 LPRA sec. 1125. Así pues, cuando los términos, condiciones, exclusiones y limitaciones del contrato de seguros son claros y específicos, y no dan margen a diferentes interpretaciones, se deben hacer valer de conformidad con la voluntad de las partes contratantes. Carrasquillo Pérez v. Asociación y/o Consejo de Titulares del Condominio Parque 352, *supra,* al citar a López v. Atlantic Southern Ins. Co., 158 DPR 562, 569 (2003).

En cuanto al ejercicio de interpretación, es menester establecer que los términos del contrato de seguro se consideran claros cuando su lenguaje es específico, sin que dé lugar a dudas, ambigüedades o sea susceptible de diferentes interpretaciones. Sin embargo, toda vez que el contrato de seguro es uno de adhesión, redactado en su totalidad por el asegurador, aquellas cláusulas dudosas o ambiguas deben interpretarse liberalmente en beneficio del asegurado para hacer cumplir el designio intrínseco de la póliza: dar protección al asegurado. Maderas Tratadas v. Sun Alliance et al., 185 DPR 880 (2012).

C.

*Las cláusulas de exclusión*

Con relación a la controversia ante nos, es menester señalar que "un seguro no responde por toda gestión imaginable del asegurado que pueda

---

[1] Se denomina póliza el documento donde se consignan los términos que rigen el contrato de seguro. Art. 11.140(1) del Código de Seguros, 26 LPRA sec. 1114(1).

causar daño a terceros". <u>Carrasquillo Pérez v. Asociación y/o Consejo de Titulares del Condominio Parque 352</u>, *supra,* al citar a <u>W.M.M., P.F.M. et al. v. Colegio et al.</u>, 211 DPR 871 (2023). Estas se circunscriben a determinadas actividades específicamente delimitadas en la póliza conjuntamente con las exclusiones que esta dispone. Por ello, para precisar el alcance de la protección que ofrece una póliza, debemos evaluar si el contrato contiene cláusulas de exclusión que descarte de la cubierta determinados eventos, riesgos o peligros. *Íd.*, y casos allí citados. Tales exclusiones deben interpretarse restrictivamente en contra del asegurador. No obstante, en aquellos casos en los que las cláusulas de exclusión sean claras y apliquen a determinada situación, "[l]a aseguradora no será responsabilizada por aquellos riesgos expresamente excluidos". *Íd.*

### -III-

En contra de la sentencia dictada en el caso, la apelante reclama que la actividad en la que participó no califica como una competencia ni juego. Igualmente, niega que esta trate de un deporte competitivo, una demostración en el sentido de una manifestación pública, ni una exhibición para entretenimiento, carrera o espectáculo. Por este hecho, asevera que la clase de "*Gravity Fit*" ofrecida en el evento de "Me, Myselft & I" en la que participaba cuando tuvo el accidente no está contemplada en el inciso (1) de la cláusula de exclusión.

De igual forma, argumenta que no puede catalogarse que cumple con la definición de participante a la que se refiere el endoso A 06/22 sobre exclusión. Ello así, puesto que "si miramos cada una de las personas identificadas como "participant" en el citado texto, vemos que todos corresponden a profesionales que se dedican a montar, operar, mantener y ejecutar espectáculos, los que incluyen espectáculos atléticos/deportivos."

Basándose en estos planteamientos, la apelante arguye que nada en el expediente permite clasificarle como una atleta, deportista o profesional

que se dedica al montaje, la organización o ejecución de eventos de entretenimiento y/o espectáculos. En contrario, expone que los documentos del caso demuestran que es una persona privada que se apuntó a participar en una de las clases provistas en el evento "Me, Myself & I" cubierto por la póliza expedida por MAPFRE. Al amparo de estos planteamientos, señala la inaplicabilidad de la cláusula de exclusión a sus circunstancias y, por consiguiente, la improcedencia de la desestimación sumaria resuelta en el caso.

El dictamen apelado concedió una moción de desestimación y/o sentencia sumaria. Por tanto, tal como nos ordena nuestro ordenamiento jurídico a hacer, debemos primero examinar si la moción de sentencia sumaria interpuesta por MAPFRE cumplió con los requisitos de forma que exige la Regla 36.3 de Procedimiento Civil, *supra.* Igual evaluación debe hacerse en cuanto a la oposición instada por la parte apelante frente a dicho escrito. Realizado tal examen, encontramos que ambos documentos cumplen con los requisitos de la mencionada disposición.

Asimismo, hemos evaluado si existen controversia sobre hechos medulares que impidan la resolución sumaria de la polémica de auto y respondemos en la negativa. Nos corresponde pues, resolver los efectos de la cláusula de exclusión incluida en el endoso A 06/22 de la póliza expedida por MAPRE para el evento "Me, Myself & I". Entonces, deberemos evaluar si la aplicación de la mencionada estipulación y la consecuente desestimación decretada por el foro primario fue correcta.

En lo pertinente, en endoso A 06/22 de la póliza en controversia contiene el siguiente lenguaje sobre exclusiones:

ENDORSEMENT A

Pandemic / Epidemic / Coronavirus Disease Exclusion

Notwithstanding any provision to the contrary within this policy or any endorsement thereto, it is agreed that this policy shall exclude any loss (multiple or single), claim, damage, bodily injury, liability, cost or expense of whatsoever nature directly or indirectly

caused by, arising out of, resulting from or in connection with an actual, or perceived, or fear of, an epidemic or pandemic, (whether declared or not as such by the competent authorities), or infectious disease including but not limited to:

a) Coronavirus disease (COVID-19);
b) Severe acute respiratory syndrome coronavirus 2 (SARS-CoV-2);
c) any mutation or variation of the above.

This policy also excludes any loss, claim, damage, bodily injury, liability, cost or expense of whatsoever nature directly or indirectly caused by, arising out of, resulting from or in connection with any action taken or failure to take action in controlling, preventing, suppressing or in any way relating to such epidemic, pandemic, or infectious disease or any mutation or variation thereof.

Pyrotechnic Acts:

IT IS HEREBY UNDERSTOOD AND AGREED THAT NO COVERAGE IS AFFORDED FOR PYROTECHNIC ACTS, FIREWORKS OR SIMILAR EFFECTS PERFORMED BY THE INSURED OR ON THEIR BEHALF.

Amusement Devices:

IT IS HEREBY UNDERSTOOD AND AGREED THAT NO COVERAGE WILL BE PROVIDED FOR BODILY INJURY OR PROPERTY DAMAGE RESULTING FROM THE OPERATION AND USE OF ANY AMUSEMENT DEVICES AND EXPOSURES, INCLUDING BUT NOT LIMITED TO: INFLATABLE DEVICES, "TORO MECANICO", CARRUSEL; PONY HORSE RIDES OR INCIDENTS RELATED TO THE HANDLING &/OR EXHIBITION OF ANIMALS.

Collapse of Temporary Structures:

IT IS HEREBY UNDERSTOOD AND AGREED THAT THIS POLICY DOES NOT APPLY TO ANY DAMAGE ARISING OUT OF THE COLLAPSE OF ANY TEMPORARY GRANDSTAND, TENT, BLEACHER, STAGE AND/OR ANY OTHER TEMPORARY STRUCTURE.

THIS EXCLUSION DOES NOT APPLY TO TENTS WHICH ARE SIZED 20FT BY 20FT OR LESS.

Se incluye el wording a la CG 0001 (ed. 04/ 13) para proveer cubierta PD:

SECTION 1, COVERAGES (2), EXCLUSION J: "DAMAGE TO PROPERTY" IS AMENDED AS FOLLOWS: PARAGRAPHS (1), (3) AN (4) OF THIS EXCLUSION DO NOT APPLY TO "PROPERTY DAMAGE" (OTHER THAN DAMAGE BY FIRE) TO PREMISES, INCLUDING THE CONTENTS OF SUCH PREMISES, RENTED TO YOU FOR A PERIOD OF 7 OR FEWER CONSECUTIVE DAYS. A SEPARATE LIMIT OF INSURANCE APPLIES TO DAMAGE TO PREMISES RENTED TO YOU AS DESCRIBED IN SECTION IIILIMITS OF INSURANCE.

THIS EXCEPTION IS LIMITED TO $50,000. PER OCCURRENCE AND IS NOT IN ADDITION TO THE LIMIT DECLARED UNDER SECTION III- LIMITS OF INSURANCE.

**This policy does not provide coverage for 'bodily injury', 'property damage', or 'personal injury' to any <u>'participant'</u> or 'spectator" arising out of;**
**(1) The practicing for or participation of any person in any contest, game, sport, demonstration, exhibition, race or show covered by this policy; or**
**(2) The use of any 'amusement or recreational device' or incidents related to the handling &/or exhibition of animals operated by or on behalf of the insured; or**
**(3) The use of any pyrotechnic acts, fireworks or similar effects performed by the insured or on their behalf.**
**(4) The ownership, operation, maintenance, existence or use of a swimming pool. This exclusion applies whether such use is authorized or unauthorized.**

**The term 'participant' shall include athletes, sportsman or sportswoman, performers, stagehands, volunteers, drivers, set up crew, pit crew and other persons located in the pit area, security personnel, mechanics, stewards, officials or attendants, or any other person taking part in Paragraph 1, 2, 3 or 4 above".**

**The term 'amusement device' shall include exposures such as; inflatable devices, mechanic bulls, amusement rides, flat rides, gravity rides, and vertical rides.**

Use of Firearms

COVERAGE WILL NOT BE AFFORDED FOR BODILY INJURY OR PROPERTY DAMAGE ARISING FROM THE USE OF FIREARMS BY ANY PERSON DURING THE COURSE OF AN ACTIVITY

Liquor Liability:

COVERAGE FOR LIQUOR LIABILITY IS NOT PROVIDED.

IT IS HEREBY UNDERSTOOD AND AGREED THAT NO COVERAGE WILL BE PROVIDED FOR THE SALE, GIFT, DISTRIBUTION, FURNISHING OR USE OF ALCOHOLIC BEVERAGES.

THIS POLICY WILL NOT PROVIDE COVERAGE FOR BODILY INJURY AND/OR PROPERTY DAMAGES ARISING OF ANY ACCIDENT AND /OR OCCURRENCE INVOLVING A PERSON, UNDER THE AGE OF 18, UNDER THE INFLUENCE OF ALCOHOL (Énfasis nuestro).

Al evaluar la cláusula de exclusión antes transcrita de forma global, integral y con particular atención al lenguaje utilizado, concluimos que la interpretación brindada por la apelante, en cuanto a que la palabra participante en el contexto de la póliza se refiere a aquellos profesionales que se dedican a montar, operar, mantener y ejecutar espectáculos, es inaplicable. Esto, pues la cláusula excluye de forma expresa los daños y las pérdidas por lesiones corporales sufridas por, entre otras personas, espectadores, participantes y asistentes de la actividad que, entre otras

cosas, participen de cualquiera de las exhibiciones o actividades allí programadas.

-IV-

Por las razones antes brindadas, confirmamos el dictamen recurrido.

Lo acordó y manda el Tribunal, y lo certifica la Secretaria del Tribunal.


Lcda. Lilia M. Oquendo Solís
Secretaria del Tribunal de Apelaciones